UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JOHN DOE,
        Plaintiff,

v.                                    C.A. NO.:  17-191-JJM-LDA

BROWN UNIVERSITY,
        Defendant.

## DEFENDANT BROWN UNIVERSITY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO REQUIRE PLAINTIFF TO PROCEED UNDER HIS REAL NAME

Defendant Brown University ("Brown" or the "University") submits this memorandum in support of its motion to require Plaintiff to proceed under his real name.

**I.     Introduction**

Plaintiff, age 24, is a recent Brown graduate who has sued the University raising multiple causes of action.  His status changed during this lawsuit – from an undergraduate student who was on Brown's campus to an alumnus who lives in California.  Plaintiff is litigating serious and far-reaching allegations against Brown and seeks substantial damages.  While publicly touting himself on the Internet as a Brown graduate, he has shielded himself anonymously behind a pseudonym to cast aspersions against his alma matter.

When Plaintiff commenced this lawsuit on May 4, 2017, he was enrolled at Brown as an undergraduate student with a scheduled May 2018 graduation date.  In addition to seeking damages, Plaintiff demanded that the Court enter a declaratory judgment and issue a permanent injunction to prevent Brown from reopening a closed Title IX matter, even though Brown had not stated any intention to do so.  Specifically, Plaintiff requested that the Court enter "[a] declaratory judgment that no probable cause exists to support an investigation of the incident

referred to in [two] May 7, 2014 letters [that Brown's Office of Student Life issued to Plaintiff]" and "[a]n injunction prohibiting Brown from taking any further action against John Doe with regard to the events in the May 7, 2014 letters." *See* Plaintiff's initial complaint (ECF Doc. No. 1-1) at 26.  Subsequently, Plaintiff amended his complaint twice, doubling the number of counts and significantly expanding his claims.

While Brown's motion to dismiss the second amended complaint was under advisement, Plaintiff graduated from the University in May 2018 with no disciplinary matters pending against him and without any disciplinary notation on his academic transcript.  Plaintiff's requests for declaratory and injunctive relief became moot upon his graduation, particularly because Brown never initiated any disciplinary investigation or proceedings against Plaintiff during the four-year period between its closure of the so-called "Title IX 2" matter in August 2014 and Plaintiff's May 2018 graduation.[1]

Unlike other "John Doe" lawsuits against universities, this is not a lawsuit by either (1) a suspended or expelled student seeking a judicial order of a reinstatement or (2) a student seeking

---

[1] *See*, *e.g.*, *Bd. of Sch. Comm'rs of Indianapolis v. Jacobs*, 420 U.S. 128, 129 (1975) (per curiam) ("[Once] all of the named plaintiffs in the action [have] graduated . . . a case or controversy no longer exists."); *Mellen v. Bunting*, 327 F.3d 355, 364 (4th Cir. 2003) ("[Students'] claims for declaratory and injunctive relief generally become moot when they graduate."); *Stotts v. Cmty. Sch. Dist. No. 1*, 230 F.3d 989, 991 (7th Cir. 2000) (holding that the "case lacks a live controversy [because the plaintiff] has graduated"); *Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1098 (9th Cir. 2000) ("It is well-settled that once a student graduates, he no longer has a live case or controversy justifying declaratory and injunctive relief against a school's action or policy."); *Pederson v. La. St. Univ.*, 213 F.3d 858, 874-875 (5th Cir. 2000) (finding Title IX injunctive relief claims mooted by student's graduation).

the expungement of a disciplinary notation on an academic transcript.  This is purely a lawsuit by a Brown alumnus seeking to collect money damages from his alma matter – nothing else.[2]

Plaintiff is situated no differently than any other plaintiff filing suit before the Court to seek the recovery of monetary damages attributed to a defendant's alleged past conduct.  For example, just as an employee suing a former employer for sexual and/or racial discrimination litigates in his or her name, so should Plaintiff in this lawsuit.  Pseudonyms are allowed by judicial discretion only in the most highly sensitive and rare circumstances where a compelling privacy interest is shown, which is not the case here.

Further, Plaintiff's second amended complaint, which spans sixty-nine pages and 425 paragraphs, casts far astray from the chronology and specific details of his enrollment at Brown between September 2013 and May 2018.  Resorting to many sensationalized contentions, Plaintiff has publicly accused Brown of strongly disputed allegations of institutionalized gender bias and racism.

Brown will prove that it never discriminated against Plaintiff or breached any aspect of the parties' educational contract.  Because of the scandalous manner in which Plaintiff has pled his allegations, Brown must not only defend itself in the courthouse, but also in the public domain.  Brown respects fully that public scrutiny of a judicial proceeding is encouraged in our democracy and expected under the Federal Rules of Civil Procedure.  Yet, Plaintiff remains behind the shield of a pseudonym, while strongly impugning his alma mater's reputation.  As a matter of basic fairness and consistent with the public's right to know who is turning to its courthouses, the Court should require Plaintiff to proceed in his real name, especially where he

---

[2]  With this motion, Brown has filed an affidavit of its Registrar, Robert F. Fitzgerald, attesting to a true and accurate copy of Plaintiff's Brown transcript (filed under seal).

3

has no compelling privacy interest outweighing the strong presumption of open judicial proceedings.

## II. The Court's Review of the use of Pseudonyms in this Case and Other Recent Lawsuits

On November 30, 2017, upon filing his second amended complaint, Plaintiff moved to have the Court approve his proceeding under the pseudonym. (Doc. No. 16). During a December 14, 2017 hearing, the Court addressed Plaintiff's motion and requested Brown's position. Brown explained that it was not taking any position at that time because Plaintiff was still enrolled as an undergraduate student and a member of its campus community. Also, Brown expressed its concerns to protect the privacy and anonymity of the two female Brown students who filed complaints against Plaintiff and the Brown student witnesses who participated in Brown's investigation of the two complaints, which remains Brown's current position regarding all of those non-parties to this litigation. The Court allowed Plaintiff to proceed under a pseudonym.

The Court's allowance of Plaintiff's usage of a pseudonym is not a static result that becomes the law of the case. "[T]he calculus regarding the usage of a pseudonym may change depending on the stage of the litigation." *John Doe v. Trs. of Dartmouth Coll.*, 2018 WL 3756950 (D.N.H. Aug. 7, 2018) (citing *Does I thru XXIII v. Advanced Textile Corp.*, 214 F. 3d 1058, 1069 (9th Cir. 2000) (court should evaluate use of pseudonym "at each stage of the proceedings")); *Doe v. Cabrera*, 307 F.R.D. 1, 7 (D.D.C. 2014) (prejudice from the use of pseudonym may increase over the course of a case). Indeed, the calculus has changed with Plaintiff's May 2018 graduation.

4

4844-9516-5555.2

Brown will explain below why Plaintiff should be required to litigate in his own name at this time and through the final resolution of this lawsuit. Before doing so, Brown puts this matter in context by summarizing the Court's recent review of pseudonym usage in other cases.

In *Jane Doe v. Brown Univ.*, 209 F. Supp. 3d 460 (D.R.I. 2016), appeal filed, No. 16-1954 (1st Cir.) (argued 2/9/17), the Court did not address whether Plaintiff would be allowed to continue to litigate under a pseudonym because it granted Brown's motion for summary judgment. Nonetheless, the Court stated as follows in a footnote to its opinion:

> Because the Court is entering judgment for the Defendants, it need not reach the question of the Plaintiff's continued anonymity. However, if this matter were to have continued, the Court would have granted the Defendants' motion [to vacate a prior ex parte order allowing the Plaintiff's pseudonym] and required the Plaintiff to proceed identified. Based on the totality of the circumstances in this case, balancing the need for transparent, open and public court proceedings with a "risk of unfairness to the opposing party," the Court finds that the need for transparency in this public forum outweighs the Plaintiff's desire for anonymity in this matter. *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000) ("a district court must balance the need for anonymity against the general presumption and the risk of unfairness to the opposing party. *See M.M. Zavaras,* 139 F.3d 798, 803 (10th Cir. 1998); *James [v. Jacobson]*, 6 F.3d [233,] 238 (4th Cir. 1993); *Doe v. Frank*, 951 F.2d 320, 323-24 (11th Cir. 1992); *[Doe v.] Stegall*, 603 F.2d [180,] 186 (5th Cir. 1981)").

Id. at 466, n. 2.

In *John Doe v. Brown University*, C.A. No. 16-17-WES, a junior undergraduate student challenged his suspension following a disciplinary process that found him responsible for sexual misconduct charges. The plaintiff did not pursue any monetary damages. Rather, his lawsuit sought declaratory and injunctive relief reinstating him and expunging his transcript's permanent disciplinary notation. The parties agreed to an expedited bench trial that occurred in July 2016. During the bench trial, Chief Judge Smith required the plaintiff to be sworn in on the witness stand under his real name, not a pseudonym.

5

In *John Doe v. Brown University*, C.A. No. 15-144-WES, a sophomore undergraduate student was suspended for sexual misconduct.  He brought suit seeking, *inter alia*, his reinstatement and the expungement of the disciplinary notation on his transcript.  During the pendency of the lawsuit, the plaintiff completed his undergraduate education at another institution, so his reinstatement request became moot but he still sought expungement of his transcript notation in addition to a damages claim.  The case was scheduled for a jury trial on September 26, 2018.  As the trial date neared, Chief Judge Smith questioned whether the plaintiff must appear at the trial under his actual name, and the parties briefed their respective positions with Brown arguing that the plaintiff should appear before the Court in his actual name.  Because the parties settled the litigation, the pseudonym issue raised by Chief Judge Smith was not resolved.  *See* Brown's memos. filed in 15-144-WES, Doc. Nos. 129, 141.

In *John Smith v. Brown University*, C.A. No. 18-126-JJM, the Court recently allowed a plaintiff to proceed under a pseudonym in his breach of contract lawsuit against Brown, seeking the expungement of a disciplinary notation on his Brown transcript.  The Court ordered that the plaintiff may proceed under a pseudonym because *"[i]n this unique circumstance*, the need for the Plaintiff to proceed anonymously outweighs the Court's *strong preference for proceeding publicly*.  Plaintiff's request for relief would be negated if his identity were publicly disclosed at this point because he alleges that Brown University breached its contract by making his discipline publicly available on his transcript.  If the Plaintiff had to proceed using his name, and if the matter is resolved in his favor, any relief to which he would be entitled would be hollow."  C.A. No. 18-126-JJM, 4/27/18 Text Order (italics added).

This case differs significantly from the above-referenced cases, where the Court limited and questioned the usage of a pseudonym.  No "unique circumstance" exists to justify Plaintiff's

continuing usage of a pseudonym in this litigation. Plaintiff completed his undergraduate education at Brown and graduated from the University without any disciplinary notation on his transcript. There is no fear or threat of any exposure of his identity or potential reprisals against him on campus, as Plaintiff resides in California according to the information that his counsel provided during the parties' Rule 16 conference with the Court. There is nothing to expunge from his transcript. If he prevails on any of his claims, a judgment awarding him monetary damages would not "be hollow," as money is specifically what Plaintiff is solely entitled to seek in this litigation. Compared to the above-summarized cases, this lawsuit weighs far more heavily and clearly in favor of requiring Plaintiff to litigate in his own name.

**III.    Argument**

    **A.    The Federal Rules of Civil Procedure reflect the constitutionally embedded presumption of openness in judicial proceedings, and principles of fundamental fairness, that prohibit parties from invoking the federal judicial power under a pseudonym in all but the most extreme circumstances.**

"[O]ne of the essential qualities of a Court of Justice [is] that its proceedings should be public." *Doe v. Megless,* 654 F.3d 404, 408 (3d Cir. 2011) (quoting *Dabney v. Cooper,* 109 Eng. Rep. 438, 441 (K.B. 1829)). There has historically and consistently been a "strong public interest in an open litigation process," and "identifying the parties to the proceeding is an important dimension of publicness" – because "people have a right to know who is using their courts." *Id.* (quoting *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997)); *see also Doe v. Public Citizen,* 749 F.3d 246, 273 (4th Cir. 2014) ("Pseudonymous litigation undermines the public's right of access to judicial proceedings. The public has an interest in knowing the names of the litigants, … and disclosing the parties' identities furthers openness in judicial proceedings[.]" (internal citations omitted)). This long-standing principle is

embodied in Federal Rule of Civil Procedure 10(a), which requires the title of the complaint to "name all parties." The rule thus serves the vital purpose of "facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly[,]" *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 183, 188-89 (2d Cir. 2008), because "party anonymity [is] a limited form of closure," *James v. Jacobson,* 6 F.3d 233, 238 (4th Cir. 1993), that "runs afoul of the public's common law right to access to judicial proceedings." *Advanced Textile Corp.,* 214 F.3d at 1067.

Further, the Fifth Circuit has also recognized a First Amendment component regarding the public's access to the names of litigants. In *Doe v. Stegall,* 653 F.2d 180, 185 (5th Cir. 1981), the court held that identifying the parties is "more than a customary procedural formality; First Amendment guarantees are implicated when a court decides to restrict public scrutiny of judicial proceedings. *Richmond Newspapers, Inc. v. Va.,* 448 U.S. 555, 100 S. Ct. 2814, 2829 & n.17, 65 L. Ed. 2d 973 (1980)." Although "[t]he equation linking the public's right to attend trials and the public's right to know the identity of the parties is not perfectly symmetrical[,]" there nevertheless, "remains a clear and strong First Amendment interest in ensuring that '(w)hat transpires in the courtroom is public property.'" *Id*. (quoting *Craig v. Harney*, 331 U.S. 367, 374, 67 S. Ct. 1249, 1254, 91 L. Ed. 1546 (1947)). And courts frequently refer to the "customary and constitutionally-embedded presumption of openness in judicial proceedings." *See, e.g., Plaintiff B v. Francis,* 631 F.3d 1310, 1315-16 (11th Cir. 2011).

As this Court expressed a quarter century ago, the rule requiring public disclosure of litigants should be altered only where a party shows a compellingly strong interest in proceeding anonymously. *Doe v. Blue Cross & Blue Shield of R.I.,* 794 F. Supp. 72, 73 n.3. The rare instances of pseudonymous litigation typically involve highly sensitive issues of "abortion, mental illness, personal safety, homosexuality, transsexuality, and illegitimate or abandoned

children in child welfare cases." *Id*. at 74 (citing *Doe v. Rosker*, 89 F.R.D. 158, 161 (N.D. Colo. 1981)). These cases involve "the presence of some social stigma or the threat of physical harm to the plaintiffs attaching to the disclosure of their identities to the public record." *Id*. No such social stigma or threat of physical harm to Plaintiff has been specifically identified or supported here.

Consequently, although it is within the discretion of a court to permit a plaintiff to proceed under a pseudonym, it is a "rare dispensation," and a court must be satisfied that there are "extraordinary circumstances" that support a request for anonymity. *Doe v. Public Citizens,* 749 F.3d 246, 273, 274 (4th Cir. 2014) (internal citation omitted); *U.S. v. Microsoft Corp.*, 56 F.3d 1448, 1464 (D.C. Cir. 1995) ("rare dispensation"); *James v. Jacobson,* 6 F.3d 233, 238 (4th Cir. 1993) ("rare dispensation"). "The use of a pseudonym is, in effect a partial sealing of a lawsuit that removes from public access certain aspects of a judicial proceeding." *Doe v. Rector and Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 592 (E.D. Va. 2014). As such, "a district court has an independent obligation to ensure that extraordinary circumstances" support a request by a party to litigate a claim for judicial relief under a pseudonym. *Id.* (quoting *Public Citizen,* 749 F.3d at 274). Thus, there is a "strong presumption" against litigation by pseudonym, *see Plaintiff B,* 631 F.3d at 1315, because a party that "invokes the judicial powers of the United States," "invites public scrutiny of the dispute and the proceeding." *Luckett v. Beaudett,* 21 F. Supp. 2d 1029, 1029 (D. Minn. 1988) (internal citation omitted).[3]

---

[3] Courts have held that, even if defendant does not object to a plaintiff's request to proceed under a pseudonym, the judiciary has an independent duty to protect the public's full access to its docket and determine whether the circumstances of a case are sufficiently exceptional to allow a plaintiff to proceed pseudonymously. The public is essentially the equivalent of a third party in interest, whose interest is in observing how the judicial power is exercised. *See, e.g., Doe v. Public Citizen*, 749 F.3d at 274; *Blue Cross & Blue Shield United of Wis.*, 112 F.3d at 872.

4844-9516-5555.2

Additionally, notions of fundamental fairness support the strong presumption that a plaintiff who invokes the government's judicial power will do so using his or her true identity. *See, e.g., Rose v. Beaumont Indep. Sch. Dist.*, 240 F.R.D. 264, 267 (E.D. Tex. 2007). "[B]asic fairness requires that where a plaintiff makes accusations publicly, [he] should stand behind those accusations publicly[.]" *Doe v. Indiana Black Expo, Inc.*, 923 F. Supp. 137, 141-42 (S.D. Ind. 1996). "[T]he mere filing of a lawsuit can have significant effects on a defendant[,] because the public charges included in a civil lawsuit can cast a shadow over the defendant's reputation until the case is resolved." *Id.* (internal citation omitted).

Plaintiff's second amended complaint has publicized 425 paragraphs of serious and strongly disputed allegations against Brown. Not only does Plaintiff allege that Brown intentionally discriminated against him based upon his sex and race to cause him injury, he accuses Brown of "pervasive racial stereotyping" and "structural racism." Doc. No. 17 at ECF pp. 23-26. He further asserts that Brown maintains an "inherent and systemic gender bias against male students accused of sexual misconduct," and utilizes a disciplinary process that "prevents male students from receiving a fair and impartial hearing when a complaint is made against them by a female student;" as well as "promot[ing] an institutional 'regime of fear' surrounding the issue of sexual assault, in which administrators and employees are deterred from advocating on behalf of male students out of concern for their job security[.]" *Id*. at ECF pp. 26-28. Plaintiff boldly asserts that Brown's "flawed program and mishandling of [his] case were symptomatic of a broader culture of inherent, systemic and intentional gender bias against male students accused of sexual misconduct" who "are invariably found guilty, regardless of evidence, or lack thereof[.]" *Id.* These are just of a few of the many extreme allegations asserted in Plaintiff's tome of a pleading, going well beyond the specific details and time period of his

enrollment at Brown between September 2013 and May 2018. Reaching back well before he stepped foot on the Brown campus, Plaintiff analogizes his case to two long-dismissed and highly publicized lawsuits against Brown in this Court brought by plaintiffs named Adam Lack and William McCormick, III (who, unlike Plaintiff, sued the University in their own names), which concerned events dating back to the mid-1990's and 2006 respectively. *Id*. at ECF p. 27.

Plaintiff's assertions of Brown's alleged intentional gender and racial discrimination, intentional infliction of emotional distress, violation of his rights under Brown's Code of Student Conduct, and breach of its implied duty of good faith and fair dealing owed to its students, are serious allegations that could very well color the perceptions of both present and potential students, as well as their parents, as to the University's fitness as an institution of higher education; thereby damaging its reputation in the academic community, and its ability to compete for the best applicants.

As should be reasonably expected in a lawsuit of this nature, Plaintiff's allegations have been the topic of coverage and commentary on the Internet, in print media, and on at least one national news broadcast. In the public discourse, Plaintiff's allegations have generated slanted headlines and coverage against Brown, such as "*Jury to decide if Brown University railroaded student because he is black.*"[4] and "*A Black Male Student Says a White Woman Bit, Choked, and Pinned Him While They Were Kissing. Guess Who Got Suspended?*"[5] This later publication prompted a nationally televised segment during a cable news broadcast.[6] Thus far, John Doe has been permitted the "rare dispensation" of publicly raising and perpetuating serious and injurious

---

[4] https://www.thecollegefix.com/jury-to-decide-if-brown-university-railroaded-student-in-title-ix-case-because-hes-black/

[5] https://reason.com/blog/2018/08/29/brown-university-title-ix-rape-race-judg

[6] http://video.foxnews.com/v/5828513390001/?#sp=show-clips

accusations from behind a "cloak of anonymity," shielding himself from any responsibility for them, *see Beaumont Indep. Sch. Dist.*, 240 F.R.D. at 267-68; *Doe v. Shakur*, 164 F.R.D. 359, 361 (S.D.N.Y. 1996); *Indiana Black Expo, Inc.*, 923 F. Supp. at 141, and if his accusations are ultimately unproven, "then anonymity provides a shield behind which defamatory charges may be launched without shame or liability." *Doe v. Smith*, 429 F.3d 706, 710 (7th Cir. 2005).

      **B.**    **Weighing the appropriate factors, the Court should require Plaintiff to proceed under his actual name.**

Nationally, federal courts have split whether plaintiffs may proceed under pseudonyms when suing universities regarding disciplinary processes. Brown refers the Court to the framework of two recent decisions – *Doe v. Trs. of Dartmouth Coll.*, 2018 WL 2048385, and *Doe v. Rider Univ.*, 2018 WL 3756850 (D.N.J. Aug. 7, 2018). Both cases, unlike this one, involve plaintiffs who were expelled.

In *Dartmouth College*, the New Hampshire Federal District Court allowed a plaintiff to proceed under a pseudonym during the pre-trial phase of the litigation, but not necessarily at trial. The plaintiff had been expelled from Dartmouth based upon sexual misconduct charges. The court noted that the First Circuit has yet to explicitly permit the practice of allowing a party to proceed under a pseudonym. 2018 WL 2048385, at *3. It cited to the related context of requests to seal judicial records, where the First Circuit has made clear that the "starting point must always be the common-law presumption in favor of public access." *Id.* (quoting *Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 70 (1st Cir. 2011)).

In granting the plaintiff's use of pseudonym at the pre-trial stage subject to further review, the court ruled in *Dartmouth College* that "public disclosure will subject [plaintiff] to reputational damage and will impair his future educational and career prospects, regardless of the outcome of this action." *Id*. at *5. It further ruled that "this is not a case where . . . the litigation

will afford the plaintiff an opportunity to 'clear his name in the community.' * * * Plaintiff has a reasonable fear that, whatever the outcome of the action, public identification will subject him to severe reputational harm and harassment and will defeat the very purpose of this litigation." *Id*. at *6 (citation omitted).

By contrast, in *Rider University*, the plaintiff, who was expelled based upon sexual misconduct charges, argued that if he were required to proceed publicly, he would suffer the exact harm his lawsuit was brought to remedy, because of the severe social stigmatization generally attached to *accused* sex offenders, and because being associated with sexual assault allegations would make it difficult for him to gain admission to other colleges and/or obtain employment. *Id*. at *4. The New Jersey Federal District Court, however, concluded "that Plaintiff's fear of social stigma fails to outweigh the general interest in favor of open judicial proceeding[,]" believing that "open litigation will provide Plaintiff the opportunity to establish that the University's disciplinary proceedings were unfair and that he should not have been expelled for violating the University's policies. Doing so would allow him to disassociate himself from any involvement in a sexual assault." *Id*. at 5 (emphasis added).[7]

A significant question before the Court is whether to follow the path of *Rider University* or *Dartmouth College*. Brown submits that the Court should adopt the former and not the latter, because this lawsuit now focuses on a Brown graduate's demands for monetary recovery based

---

[7] The *Rider University* court held that the student complainants who reported their allegations should remain anonymous. "The public interest in open judicial proceedings does not outweigh these non-parties' private interests in remaining anonymous." 2018 WL 3756950, at n.1. As it did when the Court first considered Plaintiff's request to litigate under a pseudonym, Brown takes the same position regarding the privacy interests of the students identified as Jane Doe and Sally Roe in Plaintiff's second amended complaint, as well as any current or former non-party Brown students referenced in Plaintiff's second amended complaint.

13

upon very far-reaching allegations. This case does not raise the types of concerns that courts have recognized when permitting at times an expelled or suspended student's usage of a John Doe pseudonym, while seeking reinstatement to a campus or the expungement of a disciplinary notation on an academic transcript.

Both *Dartmouth College* and *Rider University* applied the following non-exhaustive list of nine factors recognized by the Third Circuit to consider whether the specific facts justified the extraordinary measure of permitting the plaintiff to litigate under a pseudonym:

(1) the extent to which the identity of the litigant has been kept confidential;

(2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases;

(3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity;

(4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities;

(5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified;

(6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives;

(7) the universal level of public interest in access to the identities of the litigants;

(8) whether, because of the subject matter of this litigation, the status of the litigant, as a public figure or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and

(9) whether the opposition to the pseudonym by counsel, the public, or the press is illegitimately motivated.

*Dartmouth Coll.*, 2018 WL 2048385, at * 4-5 (citing *Doe v. Megless*, 654 F.3d 404, 409 (3d Cir, 2011)); *Rider Univ.*, 2018 WL 3756950, at *2-3 (citing *Megless*, 654 F.3d at 409 and *Doe v. Provident Life and Acc. Ins. Co.*, 176 F.R.D. 464, 468 (E.D. 1977)).  The first six factors, if satisfied, favor anonymity and the last three disfavor it.  *Dartmouth Coll.*, *supra* at *5-7.  Brown will review each of the nine factors to demonstrate why Plaintiff should litigate under his real name.

*First*, while Plaintiff will likely claim that he kept his identity confidential, he is touting himself as a Brown graduate on both his LinkedIn and Instagram pages.  *See* Affidavit of Steven M. Richard, Esq., attesting to copies of postings downloaded from Plaintiff's LinkedIn and Instagram pages (filed under seal).   Simply put, Plaintiff cannot have it both ways.  He should not be allowed to publish publicly that he is a recent Brown graduate, while simultaneously publicly casting scandalous allegations against his alma matter from behind the mask of a John Doe pseudonym.  Also, consistent with Plaintiff's intention to try to make this an overly expansive lawsuit, his Rule 26(a)(1) initial disclosure lists thirty-four persons whom he believes to have discoverable information to support his claims.  Many of these individuals had nothing to do with either the Title IX 1 or 2 matters pled in the second amended complaint.  They include a former teammate on his Brown varsity team and several of his fraternity brothers who purportedly "have knowledge of how Brown's race and gender discrimination affected Plaintiff's emotional distress."  Plaintiff has disclosed the details of his lawsuit to his friends while eliciting their support against Brown.  *See* Richard Aff., attaching Plaintiff's Rule 26(a)(1) disclosure at p. 4 (filed under seal).

*Second*, when Plaintiff moved to proceed as a John Doe plaintiff, he cited to purported fears that the disclosure of his identity would impact his ongoing education on the Brown

15

campus and a participation on a varsity sports team. Doc. No. 16-1. Plaintiff completed his undergraduate education and participated fully in his varsity sport. He is no longer on the Brown campus, now residing in California. When he moved as an undergraduate student to proceed under a pseudonym, Plaintiff stated only generally that disclosure of his identity could embarrass him or hamper his future educational and career aspirations, without identifying how. Especially now that he has graduated and left Brown, Plaintiff's bare assertions about unspecified, potential consequences are insufficient to permit him to litigate under a pseudonym against the strong presumption of openness in judicial proceedings. *See*, *e.g.*, *Doe v. Temple Univ.*, 2014 WL 4375613, at *2 (E.D. Pa. Sept. 3, 2014) (general allegations about personal and reputational harms are simply not "the kind of embarrassment [and] economic harm [to support] the use of a pseudonym.").

*Third*, the Court considers the magnitude of public interest in maintaining the litigant's confidentiality. As the court ruled in *Rider University*, "[w]hile being associated with a disciplinary hearing regarding sexual abuse at college is no doubt undesirable, the Court finds that said association does not carry with it the risk of infamy associated with other behaviors/transgressions. As a result, the Court finds that there is not a particularly strong public interest in maintaining Plaintiff's confidentiality." 2018 WL 3756950, at *6. This is especially true in this case, where there is no disciplinary notation on Plaintiff's Brown transcript. Further, the so-called "Title IX 1 matter" resolved in February 2014 with Plaintiff's placement on a one-year deferred suspension. His deferred suspension expired one-year later without any permanent disciplinary consequences. The "Title IX 2 matter" ended in August 2014 with Brown closing its investigation in Plaintiff's favor without imposing any charges against him. Both matters

16

relate to incidents that occurred five years ago during the fall of 2013 and were resolved by Brown over four years ago.

*Fourth*, the Court considers whether the case presents purely legal issues that minimize the public's interest in knowing the litigant's identity. As is obvious from the face of Plaintiff's 425-paragraph pleading, his allegations pose factual allegations that are strongly disputed by Brown.

*Fifth*, the Court considers whether Plaintiff would refuse to pursue his case if publicly identified. As the Third Circuit held in *Megless*, "a plaintiff's stubborn refusal to litigate openly by itself cannot outweigh the public's interest in open trials." 654 F.3d at 410-11. While Brown does not know what Plaintiff will do if he is required to litigate in his own name as he should, his actions in this litigation to date suggest a strong desire to pursue wide-ranging claims against Brown, as his pleading significantly expanded during the course of this litigation (doubling in size and number of counts, including adding racial discrimination claims that were not initially pled when he filed his complaint). Also, as the court noted in *Rider University*, "[t]here are many examples of plaintiffs proceeding with suits in their own names protesting sexual assault discipline from universities." 2018 WL 3756950, at *7. *See also K.W. v. Holtzapple*, 299 F.R.D. 438, 441 (M.D. Pa. 2014) (finding unpersuasive the students' argument that "news media outlets may discuss the story, which will live in perpetuity through web searches on the Internet").

*Sixth*, the Court considers whether Plaintiff has illegitimate or ulterior motives. Brown will not speculate about Plaintiff's motives.

*Seventh*, the Court considers the public interest in knowing the identities of the litigants. As the court stated in *Dartmouth College*, "[t]he seventh factor amounts to an acknowledgement

that there is a 'universal interest in favor of open judicial proceedings,' which weighs in favor of disclosing plaintiff's identity." 2018 WL 2048385, at *6 (citing *Megless*, 654 F.3d at 409).

*Eighth*, the Court weighs whether there is a stronger public interest in knowing the litigant's identity, in light of the subject matter of the litigation, the status of the litigant as a public figure, or any other reason.  To Brown's knowledge, Plaintiff is not a public figure.  However, given the extent and tone of Plaintiff's allegations, there is likely a strong public interest in knowing who is making these allegations.

*Ninth*, the Court weighs whether the opposition to use of a pseudonym is illegitimately motivated.  Brown maintains that Plaintiff, who graduated from the University and is attacking Brown's reputation and institutional integrity, should stand before the Court in his own name.  Plaintiff has chosen to litigate relying largely on far-reaching and scandalous allegations that have been the subject of public attention, yet he wishes to hide behind a pseudonym while doing so.  This is not only unfair to Brown, but not what courts seek to protect when allowing anonymous litigation in rare circumstances.

Weighing these nine factors and looking at the totality of the circumstances of this case, Brown respectfully submits to the Court that this is not a close call.  Plaintiff, a California resident, is no longer an undergraduate student on the Brown campus.  As a graduate of the University and from across the country, Plaintiff invokes the Court's jurisdiction to seek money from Brown.  While asserting anonymously his many scandalous and strongly disputed allegations against Brown, he touts himself publicly and proudly as a Brown graduate.  Simply put, this is not among the rare and exceptional cases where Plaintiff has shown any compelling privacy interest in remaining anonymous.  Plaintiff should appear before the Court and stand before the public in his real name.

## IV. Conclusion

For the reasons argued above, the Court should grant Brown's motion to require Plaintiff to litigate this case in his own name.

BROWN UNIVERSITY,
By Its Attorneys,

/s/ Steven M. Richard

Steven M. Richard (#4403)
Nixon Peabody LLP
One Citizens Plaza, Suite 500
Providence, RI  02903
Tel:  401-454-1020
Fax:  401-454-1030
srichard@nixonpeabody.com

Thomas R. Bender (#2799)
Associate Counsel
Office of General Counsel
Brown University
Box 1912
Providence, RI 02912
Tel:  401-863-5466
Fax:  401-863-1199
Thomas_bender@brown.edu

Dated:  October 9, 2018

## CERTIFICATE OF SERVICE

I certify that, on the 9th day of October, 2018, Brown University's memorandum was filed and served via the Court's CM/ECF system.

/s/ Steven M. Richard

4844-9516-5555.2