IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JOHN DOE,

        Plaintiff,

vs.

BROWN UNIVERSITY, in Providence in the
State of Rhode Island and Providence
Plantations

Defendant.

Civil Action No. 17-cv-191(JJM-LDA)

## PLAINTIFF'S OPPOSITION TO BROWN'S MOTION TO REQUIRE PLAINTIFF TO PROCEED UNDER HIS REAL NAME

Plaintiff John Doe, through his attorneys, Susan Kaplan and Sonja L. Dayoe, respectfully submit this memorandum of law in opposition to Defendant Brown University's Motion to Require Plaintiff to Proceed under His Real Name.

## NATURE OF THE CASE

Plaintiff John Doe initiated this action, *inter alia*, to salvage his reputation after being wrongly accused of two Title IX violations.  In his Second Amended Complaint (ECF No. 21, the "SAC"), Plaintiff alleged that the first Title IX incident ("T91") occurred when Jane Doe sexually assaulted him during an encounter that turned abruptly violent and sadomasochistic. Jane asphyxiated John, pushed him against a wall and held him there demanding that he obey her rules.  She bit his lip so hard it bled.  Afterwards, it was Jane who accused John of assaulting her.

Although, John informed Brown that Jane sexually assaulted him, Brown did not bring a claim against Jane, despite its mandate to investigate any Title IX violation it knew or reasonably should have known about. *See* The Department of Education's Dear Colleague Letter dated April 4, 2011, p. 4, https://www2.ed.gov/print/about/offices/list/ocr/letters/colleague-201104.html .

Instead, John was found responsible for nonconsensual contact and underage drinking and was sanctioned with a deferred suspension.  In the spring 2014 semester, Jane, who had worked closely with Brown on campus-rape advocacy, reported to Brown's Title IX office that she had uncovered a new victim of John's—Sally Roe.  However, Sally was a reluctant victim, and Brown intervened itself as the complainant ("T92").  John was placed on interim suspension, which forced him to separate from campus and fail two final exams.

Brown decided to not move forward with T92 in August 2014, but the matter remained pending as Brown kept open the option "to proceed at a later time," should "additional information relevant to the matter" arise.[1]  *See* Ex. 1 to John Doe's Declaration.  John returned to campus for the fall 2014 semester severely depressed from T91 and T92 and attempted suicide by jumping in front of a moving vehicle.  This incident led to psychiatric treatment and hospitalization.  John was on medical leave for his entire sophomore year and returned to Brown for the 2015-2016 academic year, though his initial application for readmission was rejected.

---

[1]  In its present motion, Brown misrepresents John's status as follows:  Brown asserts that, "[w]hile Brown's motion to dismiss the second amended complaint was under advisement, Plaintiff graduated from the University in May 2018 *with no disciplinary matters pending against him*" . . . . *The 'Title IX 2 matter' ended in August 2014 with Brown closing its investigation in Plaintiff's favor* without imposing any charges against him *[emphasis added]*. Defendant MOL, p. 2 and 16.  T92 was never closed during John's matriculation at Brown.  As such, T92 remained a threat until John graduated and to the extent that Brown maintains jurisdiction over Plaintiff, which will be determined through discovery, could still be reopened.  Thus far, Brown has made no finding in Plaintiff's favor in T92.  Brown also wrongly asserts that "the so-called 'Title IX 1 matter' resolved in February 2014 with Plaintiff's placement on a one-year deferred suspension.  His deferred suspension expired one-year later without any permanent disciplinary consequences." Defendant MOL p. 16.  Regardless, long after his deferred suspension expired, during the spring 2016 semester, John was put under a new, unilateral and more stringent no contact order ("NCO"), ostensibly for Jane's protection.

During that academic year, Jane Doe returned from a study program off campus and though both he and Jane had previously been subject to a mutual no contact order, nearly two years after his incident with Jane, Plaintiff was put under a unilateral no contact order ("NCO") that required him to exit any situation in which Jane appeared (*See* Ex. 2 to Doe's Declaration).

Despite John's history at Brown, Defendant wrongly asserts this "[t]his is purely a lawsuit by a Brown alumnus seeking to collect money damages from his alma mater--nothing else." Defendant MOL p. 3. This is false. Plaintiff is in fact seeking "[a]n expungement of all records in John's academic file in connection with Title IX 1 and Title IX 2." *See* SAC, p. 66, ¶ v.

## PROCEDURAL BACKGROUND

Prior to filing his SAC, Plaintiff moved this Court to proceed under a pseudonym ("Plaintiff's Pseudonym Motion," ECF No. 16) and argued that "[i]n light of the sensitive and highly personal nature of the factual averments contained in the Complaint, plaintiff is justifiably concerned that disclosure of his identity and the identities of the other individuals will unduly embarrass and hamper the individual's future educational and career aspirations." As such, Plaintiff sought pseudonyms for "all students or graduates of Defendant, Brown University, as well as the coach of Plaintiff's athletic team at Brown, whose identity, if known, would lead to the identification of Plaintiff . . . [t]hus, said individuals would be forced to endure further damages beyond those already inflicted [*emphasis added*]."[2] Defendant did not oppose the motion and at a

---

[2]  Conversely, if Plaintiff's identity were revealed, such information could lead to the identity of other students, particularly Jane Doe and Sally Roe. *See Doe v Trustees of Dartmouth Coll., 2018 DNH 088 *13-18 [2018]*(Holding that "the reasonable concern of both plaintiff and Sally Smith that they will be subjected to harassment and reputational damage absent anonymity, regardless of the outcome of this litigation—outweigh the public interest favoring public identification and open proceedings). *See also Doe v. Yale,* Fed. Dist. Ct. Connecticut, 16cv1380(AWT), *unpublished* Ruling on Pending Motions, ECF No. 10, p. 9 (Ex. 1 attached to Attorney Kaplan's Affidavit).

hearing on December 11, 2017, the Court granted Plaintiff's Motion.  John graduated from Brown a year after his class in May 2018**.**

On or about September 7, 2018, Defendant filed its Rule 16 Statement (ECF No. 33) in which Defendant represented that "as this case moves forward, Brown reserves its right to challenge whether Plaintiff should be permitted to continue to litigate under a John Doe pseudonym.  *Particularly, if this case reaches trial*, the Federal Rules of Civil Procedure expect that the trial will be an open and public proceeding with a litigant appearing under his actual name . . . [*emphasis added*]".

On or about September 25, 2018, the parties exchanged Rule 26 Initial Disclosures (Attached as Ex. 2 to the Kaplan Affidavit, under seal) in which Plaintiff identified witnesses including himself and three other family members, mental health and medical practitioners in connection with Plaintiff's emotional distress and suicide attempt; current or former Brown faculty, administration and students (all of whom are presumed to have graduated) (the "Brown Witnesses").  With respect to the students, all had a direct role in T91, T92, with the exception of Plaintiff's fraternity brothers, also graduates of Brown**,** who are all male and African American and have information concerning the extent to which "Brown's race and gender discrimination affected Plaintiff's emotional distress (the "Fraternity Brothers").

On or about October 9, 2018, the parties exchanged their first requests for information. Depositions have yet to be noticed, and none have been taken.

## ARGUMENT

I.     **Permitting Plaintiff to Proceed Under A Fictitious Name Has Already Been Decided and is Law of the Case**

This issue of whether Plaintiff may proceed under a pseudonym in this action was decided when the Court granted Plaintiff's initial Pseudonym motion.  When it comes to the use of pseudonyms, the Court may reconsider that decision. *See Doe v Sanderson*, 2017 US Dist LEXIS 63913, at *4 [D Mass Apr. 27, 2017, Civil Action No. 16-cv-12068-IT]. (Upon granting Plaintiff's Motion to Proceed under a Pseudonym holding that "[t]he grant of this motion is subject to future reconsideration of the issue upon motion of any party or by the court sua sponte").  However, "[t]he granting of a motion for reconsideration is 'an extraordinary remedy which should be used sparingly[;]' to succeed, a motion for reconsideration may only be granted if the original judgment evidenced a manifest error of law, if there is newly discovered evidence, or in certain other narrow situations."  *Palmer v. Champion Mortg*, 465 F.3d 24, 30 (1st Cir. 2006); *see also Global NAPs, Inc. v. Verizon New Eng., Inc.*, 489 F.3d 13, 25 (1st Cir. 2007); *Sonethanong v Tillerson*, 2018 US Dist LEXIS 4045, at *2 [DRI Jan. 8, 2018, No. 17-093-JJM-LDA] (Holding that "[t]o succeed on a motion for reconsideration, 'the movant must demonstrate either that newly discovered evidence (not previously available) has come to light or that the rendering court committed a manifest error of law'").  As will be discussed below, Defendant has offered no new evidence and there is no error of law.  Defendant's motion must be denied in its entirety.

II.    **There is No Error of Law and Defendant's Legal Authority is Not Controlling in this District.**

In this Court, the criteria for granting a pseudonym is long standing and clear and focuses on the party's "privacy interest" in matters that could create a "social stigma."  Pertinent to this

action, such stigmatizing private interests have included mental illness and sex.  In *Doe v Univ. of Rhode Is.*, 1993 US Dist LEXIS 19257, at *4-5, 6-7 [DRI Dec. 28, 1993, C.A. No. 93-0560B][*internal quote not cited*], the Court held that "[a] plaintiff should be permitted to proceed anonymously in cases where a substantial privacy interest is involved.  The most compelling situations involve matters which are highly sensitive, such as social stigmatization, real danger of physical harm, or where the injury litigated against would occur as a result of the disclosure of the plaintiff's identity . . . Cases of this type commonly involve abortion, mental illness, personal safety, homosexuality, transsexuality and illegitimate or abandoned children in welfare cases."

Plaintiff's Pseudonym Motion relied on *Doe v. Blue Cross*, 794 F. Supp. 72, 74 (D.R.I. 1992), which holds that "[t]he common thread running through these [pseudonym] cases is the presence of some social stigma." Moreover, the *Blue Cross* Court identified "mental illness" and the "right not to disclose . . . sexual histories and preferences" as issues that give rise to stigmatization, noting that "[m]atters of sexual identity and sexual preference are exceedingly personal . . ." These cases and the criteria on which they rely are not limited to Title IX cases and are meant to inform the scope of plaintiffs seeking anonymity in this Court.  Therefore, there is no criteria in this court or any court that addresses, for example, whether the student-plaintiff graduated or not from the institute of higher learning he or she is litigating against, or if he or she had graduated, whether or not he or she is proud of that event.  The sole criteria are private interests and social stigma.

John asserts allegations of mental illness in the SAC inasmuch as, after T92, he suffered severe depression which compelled him to attempt suicide by jumping in front of a moving vehicle.  John also asserted in his SAC that the sexual misconduct he was accused of is sadomasochism, a style of sexual activity John does not indulge in.  In turn John also accused

Jane of performing uninvited and unwelcome sadomasochistic acts on him.  Mental illness,

suicide attempts and participation in sadomasochism each carry social stigmas.  Moreover, John

is most stigmatized by having been accused of and found responsible for (sadomasochistic)

sexual misconduct.  Stigmatization of men responsible for sexual misconduct is an idealized

aspiration of the current "#MeToo" and "Believe the Victim" campaigns and has the intent and

often the effect of destroying a person's reputation and career prospects.

Of the #MeToo movement's extensive rhetoric concerning its advocacy and aspirations

for affecting the future of men accused of sexual misconduct, the movement's misandristic and

punishing sensibility is best summed up by Amber Tamblyn, (*The New York Times*, Nov. 30,

2017 https://www.nytimes.com/2017/11/30/opinion/im-not-ready-for-the-redemption-of-

men.html) as follows:

> We're in the midst of a reckoning. It's what toxic masculinity's own medicine
> tastes like. And people should allow the consequences to unfold, regardless of
> how it affects those they consider to be friends. The only way to enforce seismic,
> cultural change in the way men relate to women is to draw a line deep in the sand
> and say: This is what we will no longer tolerate. You're either with our bodies or
> against our bodies. The punishment for harassment is you disappear. The
> punishment for rape is you disappear. The punishment for masturbation in front of
> us is you disappear. The punishment for coercion is you disappear.

*Doe v. Blue Cross* remains vital law in this Court and there has been no change in law.

Brown presents four pseudonym-plaintiff cases against Brown University (*Jane Doe v. Brown*,

209 F. Supp. 3d 460 (D.R.I. 2016); *John Doe v. Brown,* C.A. No. 16-17-WES*; John Doe v*

*Brown*, C.A. No. 15-144-WES; and *John Smith v. Brown*, C.A. No. 18-126-JJM) in support of its

Motion.  Other than the *John Smith* case, all of these cases address the continuance of the

plaintiff's pseudonym at the summary judgment stage, or when the case was trial ready, settled

or otherwise moot.  All of these cases allowed a pseudonym to protect the student's identity in

the face of a school disciplinary action.  All of the John Doe/Smith cases are for sexual

misconduct (the Jane Doe case was for academic integrity, which may not carry the same degree of social stigma—the standard in this Court-- as sexual misconduct).  None of these cases in any way support stripping Plaintiff of his John Doe status at this early stage in this case when discovery has just begun.  In all, these cases do not in any way demonstrate a change of law in this Court, and the case law on which Plaintiff's Pseudonym Motion relied remains controlling authority. *See Duran v Wall*, 2016 US Dist LEXIS 130734, at *10 [DRI Sep. 21, 2016, No. 15-13-M-LDA]. *Ashcroft v. Al-Kidd*, 563 U.S. 731, 746, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) (stating the importance of controlling authority in determining whether a right was "clearly established"); *see also Savard v. Rhode Island*, 338 F.3d 23, 28 (1st Cir. 2003) ("The court must canvass controlling authority in its own jurisdiction and if none exists, attempt to fathom whether there is a consensus of persuasive authority elsewhere").

Regardless, Defendant also relies on the anomalous decision in *Doe v Rider Univ.*, 2018 US Dist LEXIS 133146 [DNJ Aug. 7, 2018, Civil Action No. 16-4882 (BRM)], which is being appealed to the District Court (*See* ECF No. 55), and *Doe v Trustees of Dartmouth Coll.*, 2018 DNH 088 [2018] to support its Motion.  However, these cases are from other jurisdictions and are not controlling in this action and are therefore irrelevant to the question of whether this court made an error of law when it granted Plaintiff's Pseudonym Motion. *See Doe v Wesleyan Univ.*, 2015 US Dist LEXIS 157685, at *2 [D Conn Nov. 23, 2015, No. 3:14-cv-1735 (SRU)] ("The plaintiff cites various cases from different jurisdictions and characterizes them as 'relevant' authority . . . . None of those cases is controlling . . .").

Moreover, neither *Doe v Rider* nor *Doe v Dartmouth* speak to *Savard v. Rhode Island's* requirement of a "consensus of persuasive authority" as there is no consensus of persuasive

8

authority among the Circuit Courts.  Indeed, to the extent that any other Circuit has its own

"test," they are different from one another. S*ee Sealed Plaintiff v Sealed Defendant #1*, 537 F3d

185, 190 [2d Cir 2008]; *Doe v Megless*, 654 F3d 404, 409-410 [3d Cir 2011]; *Doe v Porter*, 370

F3d 558, 560 [6th Cir 2004]; *Does I thru XXIII v Advanced Textile Corp.*, 214 F3d 1058, 1068-

1069 [9th Cir 2000]; M.M. v Zavaras, 139 F3d 798, 803 [10th Cir 1998]; *Doe v Frank*, 951 F2d

320, 323 [11th Cir 1992].

Moreover, some Circuit Courts have no test at all. *See Doe v Stegall*, 653 F2d 180, 185-

186 [5th Cir 1981] (Holding that the Court has "no hard and fast formula for

ascertaining whether a party may sue anonymously."); *Doe v Purdue Univ.*, 321 FRD 339, 341

[ND Ind 2017] (Holding that "[t]he Seventh Circuit Court of Appeals has not articulated a test or

elements for determining when exceptional circumstances exist to justify allowing a party to

proceed under a pseudonym."); *Doe v United States*, 210 F Supp 3d 1169, 1172-1173 [WD Mo

2016] (Confirming that "[n]either the Eighth Circuit nor the Supreme Court has addressed the

issue of when a pseudonym may be used)  Others grant that the trial court's discretion overrides

any strict test. *James v Jacobson*, 6 F3d 233, 238 [4th Cir 1993] (Holding that while certain

"guidelines" are to be considered, "[t]he decision whether to permit parties to proceed

anonymously at trial is one of many involving management of the trial process that for obvious

reasons are committed in the first instance to trial court discretion").

Accordingly, *Doe v Rider* and *Doe v Dartmouth* and the test Defendant follows in its

Motion are irrelevant to whether this Court should reconsider its previous position granting

Plaintiff the use of a pseudonym.

### III.     There is No New Evidence

As stated, discovery has just begun between the parties.  No documents have been produced and no depositions have even been noticed.  There is no new evidence since John filed his SAC and Brown has cited none.  Brown instead argues that the "calculus has changed" between this Court's grant of the use of the pseudonym in Dec. 2017 and now. Defendant's MOL, p. 4.  However, none of the "changes" Defendant relies on are new, some do not even qualify as a change, and none are relevant as discussed below.

### A.  Plaintiff Graduated from Brown

In this first instance, congratulations to Plaintiff are in order—he had a difficult time of it and he completed his mission.  But without depositions having even occurred and without any evidence that should alter this Court's standing decision, Defendant's focus on this point is another irrelevancy.  Defendant argues that because John continued to study and participate in athletics at Brown while this action was pending then "touted" himself as a Brown graduate on his social media, his pseudonym should be revoked in this action.  This is a non-sequitur and baseless, and Defendant provides no authority to support this argument.  There is none.  Pseudonyms in Title IX cases are not exclusive to undergraduates and authority supports granting a pseudonym to a graduate of an institution the plaintiff is suing.  The pseudonymous plaintiff in *Doe v. Yale* did not even commence his action until after he graduated, yet the Fed. Dist. Court of Connecticut granted his request to use a pseudonym, without even addressing his change in status from student to alumna.  *See* Kaplan Affidavit ¶ 4.

Brown characterizes Plaintiff 's attitude towards his graduation as "proud,"  however, Brown cites no case—and none exists—that considers a Plaintiff's sentiment towards his *alma*

*mater* or his graduation ceremony as a factor determining the use of a pseudonym.  Regardless, as Plaintiff has not yet been deposed, Brown's characterization of Plaintiff's sentiments towards Brown, his motivation to attend graduation, and his feelings upon graduation are purely speculative.  Despite all he's been through, Plaintiff cannot identify himself as having graduated from any other university.  The fact is that Plaintiff matriculated at Brown, earned his diploma, and as such, has the same rights and privileges of any other graduate to attend graduation and identify as a graduate as is necessary to qualify for career opportunities and graduate education.

On a practical level, whether or not a plaintiff graduated from the institution he is litigating against should not determine whether or not a Plaintiff may use a pseudonym as it improperly attempts to exclude a graduate from litigating under a pseudonym regardless of the social stigmas he may face.  Defendant's argument also improperly attempts to nullify the statute of limitations for these actions.  Given the length of time litigation takes to reach its conclusion, this criteria would chill otherwise legitimate claims as every senior and most juniors would be disqualified from being able to successfully move to use a pseudonym in this Court as they would graduate while the litigation remained pending.  Moreover, it would disqualify students who choose to wait until they graduate to commence litigation (assuming the statute of limitations does not toll).  In essence, Brown's only-matriculated-students-but-not-graduates argument is a meaningless distinction that no court under any test has considered.

In its Motion, Defendant argues that Plaintiff should use his real name, but that the aliases for other student-witnesses, most of whom have also graduated, should remain in place. This is an untenable position.  As John argued in his Pseudonym Motion, "[t]he witnesses for whom Plaintiff seeks the pseudonym prophylactic are all students or graduates of Defendant,

Brown University, as well as the coach of Plaintiff's athletic team at Brown, whose identity, if known, would lead to the identification of Plaintiff." *See* Pseudonym Motion, ECF. No. 16, p. 1. Plaintiff's argument leaves unspoken the logical counterpoint: Plaintiff's identify, if known, would lead to the identification of these student (or former student) witnesses, particularly Jane Doe and Sally Roe, whose sexual experiences with John are explicitly detailed in the SAC. *See Doe v. Yale,* Ex. 1, Kaplan Affidavit (Noting that "identification of plaintiff may pose a risk of mental harm to a third party, as exposing the name of Plaintiff could inadvertently identify Jane Roe").

### B.  Plaintiff Publicized his case to his Fraternity Brothers; There has been Media Interest in the Case; and Defendant is unable to Defend Itself

Defendant argues that Plaintiff impermissibly publicized his case to his Fraternity Brothers, who he cited as witnesses in his Rule 26 Initial Disclosures.  In the first instance, this argument is premature as there has been no depositions of any party or witness and it is mere speculation for Brown to assert that having named these witnesses, Plaintiff jeopardized his anonymity status.  Regardless, a pseudonym should not bar Plaintiff (nor Defendant) from seeking discovery and witnesses. *See Doe v. De Amigos, LLC*, No. 11-1755, 2012 U.S. Dist. LEXIS 190501, 2012 WL 13047579, at *7-8 (D.D.C. Apr. 30, 2012) (Granting plaintiff's request for anonymity and holding that though "Defendant argues that plaintiff's use of a pseudonym would cause unfairness because defendant would be unable to adequately conduct third party discovery if plaintiff's identity could not be revealed . . . defendants will not be barred from revealing plaintiff's identity during discovery."

Brown also decries the media attention this case has received.  While Brown does not accuse Plaintiff of publicizing his case to the media or in any way revealing any confidential

12

information to the general public, Brown does assert that it is prejudiced by not being able to adequately defend itself in the public sphere.

Brown cites various media outlets that reported on the case. John has never communicated with the media whatsoever about this case or in any way pursued or encouraged the media's interest; nor has he published anything relevant to this case. *See* Doe's Declaration, ¶ 12. The media's interest proves John's concern about keeping his identity and by extension the identities of Jane and Sally confidential. Regardless, Brown argues that Plaintiff should be forced to proceed under his real name because it is prejudiced by Plaintiff's anonymity and cannot defend itself in the court of public opinion. What the media reported is all part of the public record and is an exercise of the public's right to know via access to these public court records. Brown's Answer and its instant motion are part of that record as is its Motion to Dismiss and all include defensive arguments, thereby demonstrating that Brown is able to publicly defend itself without revealing John's (or Jane's or Sally's) true identity. John Doe's revealed identity would not change Brown's arguments as they are not dependent on John's personal status. Yep!

To the extent that there is media and public interest in this case, it is not because of who John is, but because of Brown's status and influence in the public sphere. Brown is not an "ordinary private party" like John whose reputation is likely to be negatively affected by this lawsuit for the rest of his life. Brown is an institution, a venerable one, with a renowned public stature. It has its own PR office and is in the news in connection with Title IX issues regardless of this case.[3] *See EW v NY Blood Ctr.*, 213 FRD 108, 112 [EDNY 2003] (Finding that

---

[3] The following is a non-exhaustive and random list of the multiple articles addressing sexual assault at Brown that are not connected to this case:

Defendant's claim "of prejudice to their reputation, is unconvincing.  Defendant is not an ordinary private party, with interests relating solely to its personal life and business reputation— rather, NYBC is organized solely to perform an important, public service.  Thus, this case is analogous to one involving a government defendant, where personal anonymity is more readily granted because of the existence of a public interest in the action and a lesser interest in personal reputation").

As noted in Doe's Declaration, the disciplinary process at Brown was confidential and Brown cannot find a single breach of this confidentiality even while referring to media stories— which stories did not include interviews of John or disclosure of his real name.  *See Doe v. Dartmouth* at 13.

### C.  Plaintiff Is Solely Seeking Money Damages, and Plaintiff's Transcript Bears No T9-Related Sanction Notation

Defendant mischaracterizes Plaintiff's SAC and prayer for relief as seeking only money damages. *See,* SAC, ¶ (v), p.66.  Plaintiff is also seeking an expungement of his record.[4]  Brown

---

https://www.businessinsurance.com/article/20180719/NEWS06/912322795/Rape-victim-can%E2%80%99t-sue-Brown-University-under-Title-IX-court-rules

https://www.bostonglobe.com/metro/2016/11/17/lawsuit-says-brown-university-did-not-properly-investigate-alleged-rape-football-players/Vd6b2q39C5kuwfzYgrnG4M/story.html

https://www.washingtonpost.com/news/grade-point/wp/2016/06/07/these-colleges-have-the-most-reports-of-rape/?utm_term=.547aece8cfcc

https://www.thedailybeast.com/exclusive-brown-university-student-speaks-out-on-what-its-like-to-be-accused-of-rape

[4] The SAC, filed while Plaintiff was still a student at Brown, also sought declaratory and injunctive relief regarding T92.  Defendant argues that John's status as a graduate should moot his remedies for declaratory judgment and/or injunctive relief in connection with T92.  This argument is irrelevant to Defendant's present motion and the cases on which Brown relies to support it do not address pseudonyms. As such, this issue would be best considered after discovery fully examines Brown's jurisdiction and statute of limitations policies for Title IX claims against students or former students.

knows this but ignores it and seems to argue instead that because if there is no T9-related

sanction reflected on the face of John's transcript, there is no damage to Plaintiff.  In the first

instance, the parties have not yet produced any discovery or expert discovery as of this writing

nor have there been any depositions scheduled.  Brown's assertions are therefore purely

speculative and it has no new evidence supporting its Motion.  As such, it is unclear to Plaintiff

the extent to which the deferred suspension in T91, the interim suspension in T92, the "open"

Title IX investigation, the related no-contact orders, the details of his medical leave and the

rejection of his first application to return to Brown from his medical leave are in fact reflected in

his academic record or the extent to which they may impact his future.  Moreover, transcript

notations and academic records are not the only sources of information about a person's sexual

misconduct.[5]

In any event, and as previously discussed, in the "#MeToo" culture, no complaint of

sexual misconduct, not to mention a complaint of sexual misconduct that had been adjudicated in

a school's disciplinary process, is too trivial or too outdated to be overlooked.  As such,

ironically, if Plaintiff were to reveal his name, his SAC and this entire litigation would cause the

very harm Plaintiff seeks to remedy.  In *Doe v. Yale,* the plaintiff therein also did not suffer a

transcript notation. *See* Kaplan Affidavit.  Regardless, the court in that action recognized that the

plaintiff's academic record and reputation had been jeopardized and granted him the right to use

a pseudonym. *See Doe v Yale, unpublished* Ruling on Pending Motions, filed Oct. 12, 2016 [ECF

No. 10], p. 9 (Holding that "the injury litigated against, namely the harm suffered by plaintiff as

a result of Yale's findings on his academic record, would be incurred as a result of the disclosure

---

[5]  As expert discovery may proceed in this action, it may disclose that graduate and professional school applications
routinely ask whether an applicant was a party to any disciplinary action, regardless of the outcome, and some
applications merely ask whether a complaint was ever made against the applicant**.**

of plaintiff's identity here; . . . plaintiff, a recent graduate of Yale, is particularly vulnerable to the possible harms of disclosure because if his identity were disclosed, it could further jeopardize his post-graduate education and employment prospects").

Indeed, if Plaintiff's identity were publicly revealed along with the fact that he has been accused of sexual misconduct and that Brown saw fit to punish him for it, he would likely never live it down.  Unless he moves on to particularly noteworthy accomplishments (which is a *Catch-22*), the very first internet search result of Plaintiff's name would likely show this litigation for the rest of his life.  And in today's world that story will almost surely stand as an obstacle to any opportunities Plaintiff may otherwise come across to ever obtain such accomplishments.

In any event, the lack of a transcript notation with respect to T91 and T92 has been known to Brown since the inception of this case and cannot be counted among the "change in calculus" for the purpose of compelling this Court to reconsider and revoke Plaintiff's pseudonymous status. Regardless, the transcript notation or lack thereof is not the end-all of a haunting reputation and career-destroying Title IX back story.  Given the reach and permanency of the circulation of information in this internet age, if John's real name were disclosed in this action, his identity as an accused and sanctioned sexual miscreant, would be known, regardless of his "clean" transcript.

## IV. Brown's Instant Motion is Without Merit

For the reasons set forth above, Brown's instant motion is without merit.  The issue was decided by this Court, and as set forth above, none of the facts or arguments relied upon by Brown change Plaintiff's basis for use of a pseudonym.  Brown's primary purpose in bringing this motion at this moment appears to be improper and vexatious—to harass and/or to needlessly increase the cost to Plaintiff and his counsel (in both time and money).

While Plaintiff hesitates to attribute wrongful motives to Defendant, the misrepresentation or complete disregard of John's claims—Defendant does not address Plaintiff's Pseudonym Motion, the basis of reconsideration, or this Court's standard with regard to privacy and social stigmas—indicates the weak merits of this present motion if not Brown's bad faith.  Brown wrongfully states that John's only motive to pursue this matter is for money and in doing so fails to acknowledge that John is also seeking an expungement of his disciplinary record.  Compounding this error, Brown also misrepresents John's disciplinary record stating that after August 2014 Plaintiff did not face discipline, but as noted above, Brown never closed T92.  Brown merely suspended the investigation pending more information and the threat of T92 being reopened remained an ever-present anvil hanging over John's education at Brown—indeed, it arguably continues to hang over John's future to this day.

Furthermore, John was placed under a new and unilateral no-contact order in spring 2016 in connection with T91 more than two years after his first encounter with Jane and a year after his deferred suspension supposedly expired.  The NCO too was an anvil hanging over John's head that affected his access to the campus, his education and other activities in that he was forced to always be on the lookout for Jane.  This was a particularly challenging burden given that Jane seemed to purposefully appear at events that were part of John's interests and activities but had been heretofore unrelated to Jane's interests and activities, as alleged in the SAC.

Finally and most importantly, Brown did not address that John's complaint deals with alleged sex acts in which he was personally involved; that the sanction against him carries a stigma of being cast as a sexual assaulter (he was accused of non-consensual sadomasochistic acts); and that this stigma had already cast a cloud over his life causing such severe depression

that he was compelled to attempt suicide by jumping in front of a moving vehicle, all of which constitute another social stigma.

Indeed, it appears that Brown's motive in bringing its Motion may be to persuade this Court to adopt the *Rider* test—a test that would result in the same outcome in this case. As shown below, when the test was applied in *Doe v. Dartmouth*, a case very similar to the one herein, the test established that the Plaintiff could proceed under the pseudonym. While the likelihood of success of the present Motion should be unlikely, the Court's adoption of this test may eventually lead to successful motions based on such a precedent for Brown in the future. Given the unlikelihood that Defendant's Motion will prevail, its motive to test the waters and introduce a new set of criteria under which Brown could win future "Real Name" motions is a waste of the Court's time as well as Plaintiff's resources.

### A. Applying *Doe v. Rider's* Nine-Point Test in the Alternative

Defendant's advocacy for *Doe v Rider's* nine-point test was adopted by *Doe v. Dartmouth* 2018 U.S. Dist. LEXIS 74066 (Dist. N.H. May 2, 2018). The allegations in *Doe v Dartmouth* are very similar to John's allegations in this action and *Doe v Dartmouth* allowed plaintiff to proceed in the litigation under a pseudonym. In *Doe v. Dartmouth*, the plaintiff alleges that "he engaged in sexual contact with a female student [Sally]," whom he described "as the sexual aggressor, and as someone he knew to be interested in sadomasochistic sex . . ." However, "Sally filed a complaint against plaintiff with Dartmouth's Title IX office. She alleged that plaintiff had physically assaulted her during their sexual encounter." *Doe v. Dartmouth* 2018 U.S. Dist. LEXIS 74066 *2-3 (Dist. N.H. May 2, 2018). While the *Dartmouth* test is not controlling, in the alternative, Plaintiff will demonstrate below that his pseudonymous status would nonetheless be maintained under that test as follows:

1.  *The extent to which the identity of the litigant has been kept confidential*

As averred to in Doe's Declaration, Plaintiff's identity has been kept confidential and

Defendant offers no evidence that such confidentiality has been breached.  Defendant's

arguments based on John's graduation and identifying five of his fraternity brothers as witnesses

and other such issues as discussed above are irrelevant and baseless.  This factor therefore

weighs in Plaintiff's favor.

2.  *The basis upon which disclosure is feared or seeks to be avoided*

As applied by the Court in *Doe v. Dartmouth*, this is the social-stigma factor, and the

*Dartmouth* Court cites *Doe v. Blue Cross & Blue Shield of R.I.,* 794 F. Supp. 72, 74 (D.R.I.

1992) to concur that "[u]ndoubtedly, 'one's sexual practices are among the most intimate parts of

one's life,' and the public disclosure of such information may subject one to embarrassment or

ridicule.'"  Moreover, the *Blue Cross* Court argued that the disclosure of Plaintiff's name would

result in reputational damage regardless of the outcome of this case. *Id*. at 13-14 as follows:

> More significant in this case is plaintiff's argument that public disclosure will subject him
> to reputational damage and will impair his future educational and career prospects,
> regardless of the actual outcome of this action . . . Such a concern is only exacerbated in
> the Internet age, which can provide additional channels for harassment and will connect
> plaintiff's name to Dartmouth's findings and sanction forever, whether or not he is
> successful in this litigation . . .  Thus, this is not a case where, far from damaging
> plaintiff's reputation, the litigation will afford plaintiff an opportunity to 'clear his name
> in the community.' [*Doe v. Megless,* 654 F.3d 404, 408 (3d Cir. 2011)]. Plaintiff has a
> reasonable fear that, whatever the outcome of the action, public identification will subject
> him to severe reputational harm and harassment, and will defeat the very purpose of this
> litigation.

Defendant's argument for this factor dismisses the weight of John's additional social

stigmas—mental illness and sexual history.  Instead Brown speaks of Plaintiff's undergraduate

status while this case was pending without acknowledging that his lack of publicity and discretion allowed him to complete his education without bringing publicity to himself or Brown. As in *Dartmouth,* this second factor weighs in plaintiff's favor.

3. *Whether there is a public interest in maintaining the plaintiff's anonymity*

The Court in *Dartmouth* interprets this factor to mean "if this litigant is forced to reveal his or her name, will other similarly situated litigants be deterred from litigating claims that the public would like to have litigated and remained neutral on this issue." Defendant decidedly weights this factor against Plaintiff arguing that there is no public interest in maintaining Plaintiff's anonymity because he does not have a notation on his transcript and argues that Plaintiff's "deferred suspension expired one-year later without any permanent disciplinary consequences." In the first instance, Defendant's averments are, as discussed above, untrue and baseless and do not even address this factor.

The public has an interest in maintaining Plaintiffs' anonymity because the social stigma Plaintiff faces—disclosure of mental illness and a suicide attempt as well as his sexual history— will be permanently and easily accessible on the internet, win or lose. Even if Brown's argument is meant in good faith that Plaintiff's claims do not rise to the level of "infamy," infamy is not the standard in this Court—social stigma is. John represents in his Declaration that he would not have initiated this action under his real name. The public disclosure and the reach and permanency of the internet would undoubtedly be a deterrent for similarly situated students. This factor also weighs heavily in Plaintiff's favor.

*Whether there is an atypically weak public interest in knowing the litigant's identities given the purely legal nature of the issues presented or otherwise*

The *Dartmouth* Court did not weigh this factor in its plaintiff's favor arguing that because the case was fact-driven, reasoning that "[t]he dispute is over how Dartmouth applied its policies in plaintiff's case, how it came to its determination of the underlying facts, and whether the procedure was tainted by any bias." *Id.* at 16. Yet, that argument is circular and should weigh in Plaintiff's favor because the facts themselves are the source of the social stigma John would suffer should his real name be disclosed. Regardless, Defendant maintains an interest in maintaining all other student-witnesses' anonymity as if the infamy that somehow evades Plaintiff, sticks like glue on everyone else. Brown can't have it both ways. This factor must also weigh in Plaintiff's favor.

4. *Whether the litigant [will] sacrifice a potentially valid claim simply to preserve [his] anonymity*

*Dartmouth* found that "[b]ecause plaintiff avers that he will not prosecute his claims if he must do so in his own name, this factor weighs in plaintiff's favor." *Id.* Plaintiff herein too avers in his Declaration that he would not have initiated this action under his real name. *Doe Dec.* ¶ 14. This factor too should weigh in Plaintiff's favor.

5. *Whether the litigant is seeking to use a pseudonym for nefarious reasons*

As in *Dartmouth,* Defendant makes no such allegation against the Plaintiff herein. Therefore, this factor too must weigh in Plaintiff's favor.

6. *Whether there is acknowledgement that there is a universal interest in favor of open judicial proceedings*

Why must the Plaintiff acknowledge this? It is a legal principle, established in the case law, and as an element in this test, demonstrates this test's inclination towards score-keeping and bureaucracy. And why must the acknowledgement be of this principle's universality? The

"interest in favor of open judicial proceedings" in the Federal Courts is unassailable. Unless, of course, when the plaintiff risks the social stigma of mental illness and sexual history, which is the exception this Court acknowledges, and is the case here.  This factor must also weigh in Plaintiff's favor.

7.  *Whether there is a stronger public interest in knowing the litigant's identity, in light of the subject matter of the litigation, the status of the litigant as a public figure, or any other reason*

There is no such interest in this case.  Despite media coverage, there was no effort by the media to disclose the Plaintiff's identity; and since Plaintiff is not at all a public figure, there should be little if any interest in disclosing his true identity.  As the Court in Dartmouth noted, "[n]one of the relevant actors in this litigation is a public figure . . . This factor does not favor disclosure," as it must not here. *Id.* at 17-18.

8.  *Whether any opposition to the use of a pseudonym is illegitimately motivated*

As discussed above, Defendant's Motion is meritless and its motives to assert it—even if viewed charitably—are questionable at best.  This factor therefore should weigh in Plaintiff's favor as well.

Nine out of nine for Plaintiff.  To quote Defendant, this is "not a close call." Defendant's MOL, p. 18. On that we can agree.

## <u>CONCLUSION</u>

For the reasons set forth above, we respectfully request that the Court: 1) deny Defendant Brown University's Motion; 2) award reasonable attorneys' fees and costs to The Kaplan Law Office for its work in connection with the instant motion; and 3) such further relief as the Court deems just and reasonable.

DATED:          November 8, 2018

Respectfully Submitted,

THE PLAINTIFF,

By:        _/s/ Susan Kaplan_
       Susan Kaplan (*pro hac vice*)
       The Kaplan Law Office
       30 Wall Street, 8th Floor
       New York, NY 10005
       Telephone:  (347) 683-2505
       skaplan@lawkaplan.com

       /s/ Sonja L. Deyoe
       Sonja L. Deyoe #6301
       395 Smith Street
       Providence, RI 02908
       (401) 864-5877
       (401) 354-7464
       sld@the-straight-shooter.com

       *Attorneys for Plaintiff, John Doe*

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on this 8th day of November, 2018, a copy of the foregoing and accompanying papers was filed via the Court's ECF and served on all parties.


By:   _/s/ Sonja L. Dey_____