UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JOHN DOE,
            Plaintiff,

v.                                                        C.A. No.: 1:17-cv-191-JJM-LDA

BROWN UNIVERSITY,
            Defendant.

**DEFENDANT BROWN UNIVERSITY'S MEMORANDUM IN SUPPORT OF
ITS MOTION FOR THE COURT'S RECONSIDERATION OF ITS PRIOR ORDERS
ALLOWING PLAINTIFF TO LITIGATE PSEUDONYMOUSLY**

Defendant Brown University ("Brown" or the "University") requests that the Court reconsider its prior rulings allowing Plaintiff to appear pseudonymously as "John Doe."

## I.      INTRODUCTION

After over five years of litigation, Brown has prevailed <u>as a matter of law</u> on Plaintiff's discrimination and contract claims with an affirmed judgment in eleven of the twelve counts pled in the Second Amended Complaint (Counts I-VIII, X-XII).  Under the First Circuit's opinion, only Plaintiff's tort claim for intentional infliction of emotional distress (Count IX) remains to be tried. *Doe v. Brown Univ.*, 2022 WL 3095288 (1st Cir. Aug. 4, 2022).

Plaintiff, who graduated from Brown over four years ago and will soon turn twenty-eight years old, stands no differently than the many other tort claimants who appear daily before the public and in this Court under their actual names (not anonymously behind a pseudonym).  Going forward, the Court should require Plaintiff to litigate <u>using his actual name</u> in the case caption, on the Court's CM/ECF docket, in all future pre-trial filings, and during all courtroom proceedings on remand.  The First Circuit had made clear that an order allowing pseudonymity should be revisited throughout a lawsuit.  *Doe v. Massachusetts Inst. of Tech. ("M.I.T.")*, 2022 WL 3646028, at \*9 (1st Cir. Aug. 24, 2022) ("District courts must be mindful that the balance between a party's

need for anonymity and the interests weighing in favor of open proceedings may change as the litigation progresses. Consequently, an order granting pseudonymity should be periodically reevaluated if and when circumstances change.") (internal citations and quotation marks omitted). Even with the benefit of the Court's prior allowance of his pseudonymity, Plaintiff, as the party seeking continuing anonymity, bears the burden of rebutting the strong presumption against pseudonyms in civil litigation. *Id*. at *8.

As the foundational principle of our democratic society's judicial system, the United States Supreme Court has stressed that "[w]hat transpires in the court room is public property." *Craig v. Harney*, 331 U.S. 367, 374 (1947). Brown has continuously stood publicly, along with its administrators who acted in the course and scope of their duties, and successfully defended itself against Plaintiff's discrimination and contract claims. Likewise, Plaintiff must now stand publicly in pursuing his surviving tort claim. *See Doe v. Megless*, 654 F.3d 404, 408 (3rd Cir. 2011) ("Identifying the parties to the proceeding is an important dimension of publicness. The people have a right to know who is using their courts.") (quoting *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997)).

Additionally, Brown has a compelling interest in protecting its Seventh Amendment right to fundamental fairness as this remanded case proceeds to a jury trial on the tort claim. By contrast, Plaintiff has no compelling justification to continue to shield himself in anonymity. To allow otherwise could significantly compromise Brown's rights in the eyes of the public and the factfinder, who could wrongfully infer that the continuing usage of a pseudonym implies that the University did something wrong (which it did not).

4853-5814-5584.1

## II.     BACKGROUND

Much has changed since the outset of this litigation over five years ago on May 4, 2017. When Plaintiff sued Brown, he was an undergraduate student with still over a year before his scheduled May 2018 graduation, so the Court allowed him to proceed pseudonymously.  Minute Entry and Text Order entered on 12/11/17.

Behind the cloak of his pseudonym, Plaintiff embarked on his aggressive litigious agenda against Brown premised upon his Second Amended Complaint totaling 67-pages, 425-paragraphs, and twelve counts.  Plaintiff anonymously hurled blusterous and scandalous public accusations that Brown and named administrators had engaged in "structural racism" and "misandrist" behaviors, as the alleged basis for his statutory discrimination and common law claims.  *See*, *e.g.*, *Doe v. Smith*, 429 F.3d 706, 710 (7th Cir. 2015) (a litigant's anonymity should not provide "a shield behind which defamatory charges may be launched without shame or liability.")

Brown successfully defended itself by letting the undisputed facts speak for themselves, showing that the University never engaged in any discrimination against Plaintiff.  Ultimately, as both this Court held in granting summary judgment in Brown's favor and the First Circuit affirmed on appeal, Plaintiff's wide-ranging gender and racial discrimination claims failed as a matter of law because they lacked a single question of material fact that was worthy of a jury trial.[1]  Similarly, as both courts held, all of Plaintiff's contract claims were devoid of any legal merit. These affirmed and final determinations in Brown's favor are binding as the law of this remanded case.

---

[1]     In addition to his failed gender and racial discrimination claims, Plaintiff also accused Brown of disability discrimination, which claim could not even survive past the pleadings and was dismissed at the Rule 12(b)(6) stage.  *Doe v. Brown Univ.*, 327 F. Supp.3d 397, 413-14 (D.R.I. 2018) (the Court's ruling on Brown's motion to dismiss).

Regarding the question of whether the Court should still permit Plaintiff to litigate anonymously in his surviving tort claim, it is necessary to take a look back to see why the Court allowed him to appear under a pseudonym.  As Plaintiff's primary claim pled in his expansive Second Amended Complaint, he contended that Brown acted unfairly and in a discriminatory manner, by holding him responsible for sexual misconduct charges relating to an October 2013 incident between him and a female undergraduate student ("Jane Doe"), who filed a sexual misconduct complaint against him in December 2013.  In March 2014, Brown completed its student conduct process, with findings that Plaintiff was responsible for some (but not all) of the charges and imposing a sanction of a one-year deferred suspension (akin to probation with no transcript disciplinary remark).  Plaintiff sought anonymity in this litigation because he was challenging Brown's determination of his responsibility for sexual misconduct regarding the October 2013 incident.

As noted above, Plaintiff was allowed to litigate anonymity at the outset of this litigation because he was still a Brown undergraduate student.  When Plaintiff graduated in May 2018, Brown maintained that the circumstances had sufficiently changed such that Plaintiff should appear before the Court under his actual name, particularly as he actively touted his Brown education in pursuing his career in the entertainment industry – his stated professional goal before graduating from Brown.  In December 2018, the Court disagreed with Brown's position, noting that the case was still in its nascent pre-trial discovery stage.  *See* ECF No. 47 (the Court's 11/19/18 Order, denying Brown's motion for reconsideration of the pseudonym allowance).

Discovery ensued for over a year resulting in a voluminous record, entailing several thousand pages of deposition testimony and documentary evidence.  After the close of the

prolonged and expansive discovery, the Court entered summary judgment in Brown's favor on September 24, 2020, which the First Circuit substantially affirmed in its August 4, 2022 opinion.

Plaintiff's surviving intentional infliction of emotional distress claim is subject to Rhode Island's three-year statute of limitations for personal injury claims.   R.I.G.L. § 9-1-14(b). Consequently, Plaintiff can proceed at trial with the tort claim only as it accrued on or after May 4, 2014.   Plaintiff <u>cannot</u> challenge Brown's determination of Plaintiff's responsibility for the sexual misconduct charges pertaining to the October 2013 incident, because the University's student conduct process completed in March 2014.   His tort claim cannot reach back that far.[2]   The result of Brown's student conduct process determination regarding the October 2013 incident <u>stands as a matter of law and cannot be challenged at trial</u>.[3]

As framed by the First Circuit's ruling, Plaintiff's tort claim focuses on events during late October 2014, when Plaintiff was still on deferred suspension status at Brown and decided to take a voluntary leave of absence for the remainder of the 2014-15 academic year.   Brown is fully prepared to show again that it did nothing wrong in connection with Plaintiff's decision to take the leave.   As Plaintiff testified under oath at his deposition and the Court noted in its summary judgment ruling, Plaintiff knew that, by late October 2014 (more than halfway through the fall 2014 semester), he was failing several courses and facing his certain placement on academic

---

[2]   Rhode Island courts have never applied the "continuing tort doctrine" to a claim for intentional infliction of emotional distress.  *See Boudreau v. Automatic Temp. Controls, Inc.*, 212 A.3d 594, 602 (R.I. 2019) ("A review of our caselaw reveals that we have only applied the continuing tort doctrine only once, in the context of claims for conversion and unjust enrichment.") (citing *Narragansett Elec. Co. v. Carbone*, 898 A.2d 87, 101 (R.I. 2006)).

[3]   As addressed in this Court's summary judgment ruling and the First Circuit's opinion, a second female student filed a sexual misconduct complaint against Plaintiff in late April 2014. Brown closed its investigation during the summer of 2014 with no charges against Plaintiff. *Doe v. Brown Univ.*, 505 F. Supp. 3d 65, 73, 81-82 (D.R.I. 2020) (the Court's summary judgment ruling); 2022 WL 3095288, at *3 (First Circuit's ruling).

5

suspension.  His decision to take the leave served him well, by allowing him to stabilize himself and later resume his Brown academic and athletic pursuits.  *Doe*, 505 F. Supp. 3d at 73, 81-82 (the Court's summary judgment ruling).

Upon his return to Brown in September 2015, Plaintiff enjoyed three rewarding academic years leading to his May 2018 graduation, during which he excelled in Brown's varsity athletics, completed his undergraduate studies, and enjoyed all aspects of campus life.  Especially, as the Court noted in its summary judgment ruling, Brown afforded Plaintiff with significant academic assistance and several accommodations to ensure his May 2018 graduation.  *Id.* at 74, 83.

Now, over four years after his graduation, Plaintiff is well into his professional career, where doors have opened for him through the benefit of his Brown education and participation in the University's varsity athletics.  Plaintiff has been employed in the entertainment industry, and he also coaches in intercollegiate athletics.  The status of this case and where Plaintiff now stands are in much different places than in May 2017, when he commenced this litigation under a pseudonym as an undergraduate student, and in November 2018, when the Court declined to reconsider the allowance of his pseudonym shortly after his graduation (and as pre-trial discovery had just begun).  After more than five years of litigation, it is time for Plaintiff to appear before the public in his actual name (not as "John Doe").  There is no reason for the Court not to require him to do so, just as Brown and its administrators have been publicly named from the outset.[4]

---

[4]   When it moved for summary judgment, Brown also moved to strike Plaintiff's future damages claim through the year 2060 and exclude the testimony of Lee E. Miller.  (ECF Doc. 62).  The Court denied the motion as moot with its grant of summary judgment.  505 F. Supp. 3d at 83 n. 11.  Plaintiff seeks future damages from Brown spanning the next four decades, calculated to the year 2060, when he will reach his anticipated retirement at age 65.  As Brown previously argued and will renew before trial, Plaintiff's future damages claim is purely speculative and totally preposterous.  The public is entitled to know who is seeking an unjustified financial windfall and demanding lifetime financial security in its courtroom.

4853-5814-5584.1

### III.    ARGUMENT

**A.    The Federal Rules of Civil Procedure reflect the constitutionally embedded presumption of openness in judicial proceedings, and principles of fundamental fairness, that prohibit parties from invoking the federal judicial power under a pseudonym in all but the most extraordinary circumstances.**

The Federal Rules of Civil Procedure do not provide for the use of pseudonyms.  To the contrary, the Rules require that "[t]he title of the complaint must name all the parties," Fed. R. Civ. P. 10(a), and that "[a]n action must be prosecuted in the name of the real party in interest," Fed. R. Civ. P. 17(a)(1).  Rule 10(a) "serves more than administrative convenience.  It protects the public's legitimate interest in knowing all of the facts involved, including the identities of the parties." *Plaintiff B v. Francis,* 631 F.3d 1310, 1315 (11th Cir. 2011).

In July 2022, the First Circuit reiterated that there is a "strong presumption against pseudonymity." *Does 1-3 v. Mills*, 2022 WL 2526989, at *3 (1st Cir. July 7, 2022).  As the First Circuit explained, "[p]ermitting parties to proceed anonymously" conflicts "with the common law presumption of public access to judicial proceedings and records." *Id.*  Public access to judicial proceedings is vital because it "allows the citizenry to monitor the functioning of our courts, thereby insuring quality, honesty, and respect for our legal system." *Id.* (quoting *Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 70 (1st Cir. 2011)).  "And '[i]dentifying the parties to [a] proceeding is an important dimension of [this] publicness.'" *Id.* (quoting *Blue Cross & Blue Shield United of Wis.*, 112 F.3d at 872).  More recently in *M.I.T.*, the First Circuit further warned that "[a] judicial system replete with Does and Roes invites cynicism and undermines public confidence in the courts' work.  The short of it is that the strong presumption against the use of pseudonyms in civil litigation rests on a sturdy foundation."  2022 WL 3646028, at *5-6.

The reasons for the strong presumption against pseudonymous litigation are obvious and compelling – "[t]here is a First Amendment interest in public proceedings, and identifying the

parties to an action is an important part of making it truly public." *Luckett v. Beaudet*, 21 F. Supp. 2d 1029, 1029 (D. Minn. 1998). It follows that, "[w]hen a party invokes the judicial powers of the United States, [he or she] invites public scrutiny of the dispute and the proceeding." *Id.*

In addition to the "customary and constitutionally-embedded presumption of openness in judicial proceedings[,]" *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992) (quoting *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981)), the Federal Rules of Civil Procedure and federal judicial decisions recognize the basic notion of "fundamental fairness" as the justification for requiring that plaintiffs must use their true identities in litigation, *See Rose v. Beaumont Indep. Sch. Dist.*, 240 F.R.D. 264, 267 (E.D. Tex. 2007). "[T]he mere filing of a civil lawsuit can have significant effects on a defendant[,]" because "[t]he public charges included in a civil lawsuit can cast a shadow over the defendant's reputation until the case is resolved[.]" *Id.* (internal citation omitted). *Accord*, *Frank*, 951 F.2d at 323-24; *Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979); *Doe v. Indiana Black Expo, Inc.*, 923 F. Supp. 137, 141 (S.D. Ind. 1996).

With this litigation heading to a jury trial on a single tort claim, which will require Plaintiff's appearance in the courtroom, the weight of authority supports Brown's position that Plaintiff must now litigate under his real name. *See Doe v. Delta Airlines, Inc.*, 310 F.R.D. 222, 225 (E.D.N.Y. 2015) (a "different balance of interests . . . comes into play at the trial phase because a jury will now be called upon to resolve critical issues of credibility."). Courts have appropriately expressed the concern that allowing a plaintiff to proceed at the trial stage under a pseudonym would communicate "a subliminal comment on the harm the alleged encounter with the defendant has caused the plaintiff." *Doe v. Cabrera*, 307 F.R.D. 1, 10 (D.D.C. 2014) (citing *E.E.O.C. v. Spoa, LLC*, 2013 WL 5634337, at *3 (D. Md. Oct. 15, 2013), for the proposition that "the court's

8

limited grant of anonymity would implicitly influence the jury should [the] case advance to trial."). The effect of this "subliminal" suggestion – indeed, it is more accurately characterized as an overt suggestion – repeated each time Plaintiff is referred to merely as "John" (which is not his actual first name) or as a "John Doe" – is strong enough that a limiting instruction would not sufficiently eliminate the resulting prejudice to Brown.  *See Cabrera*, 307 F.R.D. at 10 n.15.

As a practical matter, requiring Brown's witnesses to use a pseudonym, and not Plaintiff's actual name when referring to him, could also materially impact their demeanor while testifying. Attempting to abide by the pseudonym restriction may lead to frequent unnatural pauses, unintentional mistakes, or confusion, especially as witnesses are asked to recount facts dating back to over eight years ago by the time the trial starts.  As witnesses attempt to recall such long-ago facts, any pauses or mistakes attributable to the required pseudonym usage could lead the jury to conclude wrongly that the witnesses are instead being evasive or forgetful, when the witnesses may simply be trying to abide by the pseudonym restriction.  As one court aptly stated, conducting a trial using pseudonym can promote "trouble and confusion."  *Guerilla Girls, Inc. v. Kaz*, 224 F.R.D. 571, 575 (S.D.N.Y. 2004).  If a Brown witness inadvertently uses Plaintiff's real name instead of a required pseudonym, the Court would then have to admonish the witness and/or provide a limiting instruction, which would signal to the jury the wrong impression that the witness acted improperly.  Permitting Plaintiff to remain anonymous in his single remaining tort count would pose the "'risk of giving [his] claim greater stature or dignity'" or otherwise confus[e] or distract[] the jury," which would certainly unfairly prejudice Brown's right to an impartial fact-finder.  *Lawson v. Rubin*, 2019 WL 5291205, at *3 (E.D.N.Y. Oct. 18, 2019) (quoting *Delta Airlines*, 310 F.R.D. at 225).

In sum, two fundamental principles compel that Plaintiff must now appear in his real name: (1) the public's First Amendment right to know who is using its courtrooms and (2) Brown's Seventh Amendment right to fundamental fairness as the long trail of this litigation heads to a jury trial (especially after Brown has already incurred substantial time and expenditures to prevail as a matter of law in eleven of twelve counts and in disproving Plaintiff's publicly asserted scandalous attacks hurled at his alma mater and its named administrators behind the cloak of a pseudonym).

Plaintiff likely wants to remain anonymous so that others in his professional endeavors will not know that he is suing his alma mater, especially while he touts his Brown educational and athletic experiences to advance his career in the entertainment industry and as an intercollegiate coach.  Regardless, Plaintiff's self-serving desire to remain anonymous must finally yield to the public's constitutional right to know who has used its federal courtrooms for over five years.  This is especially so where Plaintiff seeks a lifetime damages award calculated over the next four decades from Brown, a world-renowned institution and a major employer in our state.  Plus, fundamental fairness dictates a level playing field heading to and during the trial – with both parties standing before the public and the factfinder in their actual names.

### B.   Applying the First Circuit's methodology in *M.I.T.*, it is time for Plaintiff to appear in his real name.

In *M.I.T.*, the First Circuit emphasized its commitment to "the proposition that courts – in balancing the relevant interests – must not lose sight of the big picture.  Litigation by pseudonym should only occur in 'exceptional cases.'"  2022 WL 3646028, at *7 (citing *Megless*, 654 F.3d at 408; *Frank*, 951 F.2d at 324; *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981)).

> Lawsuits in federal courts frequently invade customary notions of privacy and – in the bargain – threaten parties' reputations.  The allegations are often serious (at least to the parties) and motivated adversaries do not lack for procedural weapons.  Facing the court of public opinion under these conditions is sometimes stressful – but that is the nature of adversarial litigation.  If commonplace lawsuit-induced

10

distress were enough to justify the use of a pseudonym, anonymity would be the order of the day:  Does and Roes would predominate.

*Id*.

The First Circuit has articulated its "methodology for sorting out the *(relatively few) 'exceptional cases'* in which pseudonymity should be allowed."  *Id*. (emphasis added).  Brown addresses below the four paradigms delineated in *M.I.T.* to analyze the very limited circumstances in which pseudonymity may be warranted – none of which apply at this point.

### i.      Inapplicability of the First Paradigm

"The first paradigm involves a would-be Doe who reasonably fears that coming out of the shadows will cause him unusually severe harm (either physical or psychological)."  *Id*. (citations omitted).  Plaintiff is no longer the undergraduate student who sued Brown anonymously over five years ago.  Since graduating from Brown in May 2018, he has had over four years to establish his professional name, reputation, and standing in the entertainment industry where he has worked continuously and on the playing fields of intercollegiate athletics where he coaches.

It is Plaintiff's choice whether he wishes to proceed to a jury trial on his single surviving tort count <u>in his actual name</u>.  He must evaluate whether any potential personal or professional reputational risk of this litigation is worth its pursuit in a public trial – just like substantially all other plaintiffs (e.g., those asserting workplace or personal injury claims) who must appear in their real names.  As an established professional who is about to turn age twenty-eight, Plaintiff can make his own informed choice about how a public trial against his alma mater may impact his standing in his ongoing professional endeavors, but he should not be allowed to do so leaning upon the crutch of a pseudonym.

### ii.      Inapplicability of the Second Paradigm

"The second paradigm involves cases in which identifying the would be Doe would harm 'innocent non-parties.'"   *Id.* (citations omitted).  As discussed above, Brown has prevailed as a matter of law regarding Plaintiff's challenges to the University's determination of his responsibility for the charges relating to Jane Doe's complaint.  Plaintiff's intentional infliction of emotional distress claim cannot challenge Brown's student conduct determination that he was responsible for certain sexual misconduct charges (placing him on a one-year deferred suspension, akin to probation, with no transcript disciplinary remark), which was made through a process that completed in March 2014, because his tort claim is subject to a three-year limitations period (reaching only claims that accrued on or after May 4, 2014).

As is clear from the First Circuit's opinion, Plaintiff's tort claim focuses mostly upon events relating to his leave of absence during the fall 2014 semester, so the trial will address his decision to take the voluntary leave and whether Brown did anything to intentionally inflict emotional distress upon him as he made his decision.  The names of Brown's administrators who are the subject of this strongly disputed claim have all been made public by Plaintiff.  While arguably this second paradigm may have been relevant earlier in the litigation (before Plaintiff lost his legal challenges to Brown's sexual misconduct findings regarding the October 2013 incident), it is inapplicable now.

### iii.      Inapplicability of the Third Paradigm

"The third paradigm involves cases in which anonymity is necessary to forestall a chilling effect on future litigants who may be similarly situated."  *Id.* at *8 (citations omitted).  Arguably, when Plaintiff first filed this lawsuit as an undergraduate student, there could have been a potential chilling effect upon similar student litigants if the Court required Plaintiff to disclose his identity

4853-5814-5584.1

at that time.  Likewise, if this were a case brought by a student who was facing the prospect of not completing his undergraduate education, a pseudonym ruling may impact other cases brought by similarly situated student litigants.  Here, Plaintiff graduated from Brown with no disciplinary remark on his transcript.  Now, over four years after his graduation, he is an established professional with a tort claim – no different than the many other similar plaintiffs who daily appear before the Court in their own names.  It is highly doubtful that a ruling compelling Plaintiff to appear in his real name would somehow deter other tort claimants from filing their lawsuits and pursuing their claims.

### iv.    Inapplicability of the Fourth Paradigm

"The fourth paradigm involves suits that are bound up with a prior proceeding made confidential by law." *Id*. (citations omitted).  No such prior judicial proceeding exists here.  It is true that Brown conducted its student conduct process to determine Plaintiff's sexual misconduct disciplinary case pertaining to the October 2013 incident with "Jane Doe" subject to the confidentiality requirements of the Family Educational Rights and Privacy Act and its implementing regulations.  20 U.S.C. § 1232g; 34 CFR Part 106.  But, as noted above, Brown has prevailed as a matter of law as to all of Plaintiff's timely-asserted challenges to that student conduct process.  Brown's determination of Plaintiff's responsibility stands and is beyond the reach of his tort claim.

### v.    Summation

As the First Circuit held in *M.I.T.*, "[e]xercising its informed discretion, paying due heed to the *strong presumption against pseudonymity*, considering any evidence adduced, and weighing the parties' arguments, the court should evaluate whether this case is *exceptional* in light of the four paradigms we have identified." *Id*. at *12 (emphasis added).   To the extent that any of the

13

four paradigms may apply at this late point in this long litigation (which Brown contends that they do not), the Court must remain convinced that the strength of Plaintiff's desire for continuing anonymity outweighs the public's First Amendment right to transparency in its judicial process (in the case caption, on the docket, and inside the courtroom).  At this point over five years since Plaintiff sued Brown and after he has failed as a matter of law on eleven of twelve counts against his alma mater, any interest that Plaintiff has in his continuing anonymity is entirely self-serving and insufficient to prevent the public from knowing his identity.

**IV.    CONCLUSION**

Simply put, it is time for Plaintiff to stand before the Court and the public in his actual name – in the case caption, on the Court's CM/ECF docket, in all future pre-trial filings, and in the courtroom at trial.  Brown requests that the Court reconsider and vacate its prior orders allowing Plaintiff to appear pseudonymously.  Much has changed since the entry of those orders, and the status of this litigation weighs strongly on the side of requiring Plaintiff to appear in his actual name and no longer as "John Doe."

BROWN UNIVERSITY

By Its Attorney,

/s/ Steven M. Richard
Steven M. Richard (#4403)
Nixon Peabody LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Tel: 401-454-1020 / Fax: 866-947-1332
srichard@nixonpeabody.com
Dated: August 29, 2022

## **CERTIFICATION**

I certify that, on the 29th day of August, 2022, this memorandum was electronically filed and served via the Court's CM/ECF system.

s/ Steven M. Richard _____

4853-5814-5584.1